IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN H. GREGORY & PEGGY GREGORY, | : | No. 4:CV-04-2438 |
| Plaintiffs | : | |
| | : | (Judge Jones) |
| v. | : | (Magistrate Judge Mannion) |
| | : | |
| TIMOTHY J. SEWELL & K.A.M. TRUCKING, INC., | : | |
| Defendants | : | |

_____

| | | |
|---|---|---|
| FRANK R. DAMIANO & GWENDOLYN DAMIANO, | : | No. 4:CV-04-2439 |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY J. SEWELL & K.A.M. TRUCKING, INC., | : | |
| Defendants | : | |

_____

| | | |
|---|---|---|
| PORNCHAI JIEMJITPOLCHAI, | : | No. 4:CV-04-2440 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY J. SEWELL & K.A.M. TRUCKING, INC., | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

September 18, 2006

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

On August 23, 2006, Magistrate Judge Mannion issued a Report and Recommendation (doc. 37) recommending that this Court deny in part and grant in part Defendants Timothy J. Sewell ("Sewell") and K.A.M. Trucking's ("K.A.M.") motions for summary judgments for dismissal of the Plaintiffs' punitive damages claims.[1]  Objections to the Report and Recommendation were received on September 11, 2006.  Accordingly, this matter is ripe for our review.

**PROCEDURAL HISTORY**:

The Plaintiffs commenced these actions on November 9, 2004 by filing their complaints.  (Common Doc. 1[2]).  The three complaints raise seven counts for which relief is sought, three of which are relevant to the instant motions.  Count 4 of each of the complaints seeks punitive damages against Sewell.  Count Five of each of the complaints seeks punitive damages against K.A.M.  Count Six of each of the complaints seeks punitive damages on a theory of vicarious liability against K.A.M.  After waiving service in March 2005 (Common Docs. 5 & 6), the

---

[1] Civil Action Nos. 04-2438, 04-2439, and 04-2440 arose from the same factual transaction, the same Defendants defend each action, and the parties' filings in each action are common to all the actions, therefore, Magistrate Judge Mannion addressed the Defendants' motions in a single Report and Recommendation.

[2] Because the filings in each case are common to all of the cases, the Court cites them as "Common Doc." rather than cite separately to each case's docket.

Defendants answered the complaints on August 19, 2005. (Common Doc. 13). This case was referred to Magistrate Judge Mannion for preliminary review.

On November 7, 2005, the Defendants filed the instant motions for summary judgment on Counts 4, 5 and 6, with supporting briefs. (Common Doc. 16). The Plaintiffs filed briefs in opposition and exhibits on December 2, 2005. (Common Doc. 19). The Defendants filed reply briefs and exhibits on December 15, 2005. (Common Doc. 21). By leave of Magistrate Judge Mannion, the Plaintiffs filed sur-reply briefs (Common Docs. 22, 23, 24, & 25) and the Defendants filed sur-sur-reply briefs. (Common Docs. 26, 27 & 29). Magistrate Judge Mannion issued the Report and Recommendation on August 23, 2006, recommending this Court deny summary judgment with respect to Counts Four and Six and grant summary judgment with respect to Count Five, and accordingly dismiss Count Five of the complaints.

**FACTUAL BACKGROUND**:

In the Report and Recommendation, Magistrate Judge Mannion summarizes the intricate factual background supporting the instant actions based upon his reading of the parties submissions. We find Magistrate Judge Mannion's factual summary to be accurate and exhaustive, and accordingly we shall reiterate it in this Memorandum and Order.

" The accident underlying the actions occurred late on the night of March 2, 2003. Defendant Sewell, a tractor-trailer driver for Defendant K.A.M. Trucking,[3] was heading south on Interstate 81 in Harford Township, Susquehanna County, Pennsylvania. It had snowed off and on as Defendant Sewell drove from Ontario to southern New York. By the time Defendant Sewell entered Pennsylvania, the snow had stopped. Defendant Sewell believed that Interstate 81 was merely wet and not icy, though the temperature was below freezing. He further believed that the roadway had been salted. The Plaintiffs argue that the roadway was icy and that Defendant Sewell should have been aware of the hazard. A salt truck salted the right lane of the roadway at the point of the accident from which the actions arose immediately prior to the accident. (Common Docs. 16 at Ex. C & 20 at Exs. A, B, & N).

Plaintiff Jiemjitpolchai had been in an automobile accident on Intersate 81 in Harford Township, and he and the operator of the other vehicle were parked facing north on the verge of the southbound lanes of traffic. They sat in the other driver's car. Their hazard lights were flashing. Plaintiffs John H. Gregory and Frank R.

---

[3] Defendant Sewell was a trained driver with over thirty years professional experience who was familiar with safe driving techniques, including provisions of Canadian and U.S. law and Defendant K.A.M. Trucking's driving manual and other safety training, and the dangers of winter driving, including wet ice, black ice, and jack-knifing on slippery surfaces. (Common Docs. 16 at Ex. E, 19 & 20 at Exs. E,O, & P).

Damiano, Pennsylvania State Police troopers, responded to the accident. The troopers parked their patrol car, with its lights flashing, and investigated the accident. From north to south, the cars were parked in the following order: the troopers' patrol car, Plaintiff Jiemjitpolchai's car, and the other car. (Common Docs. 1 & 21 at Ex. A).

Defendant Sewell approached the section of Interstate 81 where the Plaintiffs were parked. Approximately one mile north of where the Plaintiffs were parked, Defendant Sewell passed a motor vehicle accident that closed the right lane of traffic and forced Defendant Sewell to pass into the left lane. Defendant Sewell claims the accident was not indicative of hazardous weather conditions, and he proceeded through the area at fifty miles per hour. The Plaintiffs claim that other traffic at the accident scene was traveling at a much-reduced speed, from between five and ten miles per hour or twenty and twenty-five miles per hour, indicating that Defendant Sewell's speed was excessive under the conditions. (Common Docs. 1, 16 at Ex. C, 19, & 20 at Exs. A, B, D, J, & K).

According to the Plaintiffs, as Defendant Sewell neared the Plaintiffs, at a point where the interstate curved downhill, he was driving in the left, or passing, lane in excess of a safe speed in light of the weather and road conditions – between fifty miles per hour according to witnesses and the Plaintiffs' expert. The

Plaintiffs argue that the roadway was slippery because of ice and Defendant Sewell improperly applied both of his brakes in contravention of sound operating principles because of the danger of jack-knifing.  The Plaintiffs' expert believes that Defendant Sewell was driving recklessly indifferently at up to three times the safe speed limit.  According to the Defendants, Defendant Sewell was driving approximately fifty miles per hour in the right lane around the curve when he noticed the patrol car's flashing lights.  They claim other vehicles, including tractor-trailers, passed Defendant Sewell.  They further claim that, when Defendant Sewell saw the patrol car's lights, he moved into the passing lane and attempted to slow down.  (Common Docs. 1, 16 at Ex. C, 19, 20 at Exs. A, B, E, J & N, & 24).

      Apparently hitting black ice, Defendant Sewell's tractor-trailer jack-knifed and careened towards the verge, where the trailer collided with the patrol car, in which sat the two troopers.  The tractor-trailer began a chain reaction in which the tractor-trailer and the patrol car continued forward to hit Plaintiff Jiemjitpolchai's car and then the other car, in which sat Plaintiff Jiemjitpolchai and the other driver.  The three Plaintiffs were severely injured.  The Plaintiffs claim that, after the accident, Defendant Sewell pulled to the side of the highway south of the Plaintiffs' cars.  According to them, a visual inspection of his tractor-trailer led Defendant Sewell to suspect he had struck the police car, but he remained in his

cab instead of offering assistance and denied hitting another vehicle to a Pennsylvania Department of Transportation salt truck driver who approached him. According to Defendant Sewell, the driver told him to wait in his cab. (Common Docs. 1, 16, 19, 20 at Exs. B, E, G, H, & I, & 29 at Ex. B).

The Plaintiffs contend that Defendant Sewell was driving negligently, carelessly, and grossly recklessly. They argue that Defendant Sewell caused the accident by ignoring several signs of dangerous road conditions, including a wet and icy roadway, an accident north of the accident Defendant Sewell allegely caused, salt trucks, weather-disabled and slow-driving vehicles, weather reports, and a disregard for safe driving principles. (Common Docs. 1, 19, & 24). According to the state trooper who spoke to Defendant Sewell at the scene of the accident, Defendant Sewell was cooperative, apparently sober, and 'a gentleman.' (Common Doc. 16 at Ex. D). Defendant Sewell was charged by the State Police with and pled guilty to violating 75 Pa. Cons. Stat. Ann. § 3361 (driving at an unsafe speed) and 75 Pa. Cons. Stat. Ann. § 3741 (driving carelessly), both summary offenses. (Common Docs. 1, 16 & 20 at Exs. M & R)." (Rec. Doc. 37 at 3-7).

**STANDARD OF REVIEW:**

When objections are filed to a report of a magistrate judge, we make a *de*

*novo* determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections.  See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. §636(b)(1); Local Rule 72.3l.  Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge.  See id.  Indeed, in providing for a *de novo* review determination rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations.  See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

**DISCUSSION**:

In the instant Motions, the Defendants argue that the Plaintiffs are not entitled to punitive damages as a matter of Pennsylvania law [4] because the Defendants' conduct with respect to the accident was not outrageous by reason of evil motive or reckless indifference, and that Defendant Sewell lacked a subjective appreciation of the risk of harm.  Defendants contend that the events were simply an accident, and that Defendant Sewell's conduct cannot support an award of punitive damages.  Further, Defendants argue that Defendant K.A.M. cannot be

---

[4] We agree with Magistrate Judge Mannion's undisputed application of Pennsylvania law to the instant Motions pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

held vicariously liable for punitive damages because Defendant Sewell's predicative behavior was not outrageous and does not suffice under Pennsylvania's standard for the vicarious imposition of punitive damages.

In response, Plaintiffs contend that Defendant Sewell's behavior was outrageous and supports an award of punitive damages because Defendant Sewell was aware of hazardous road conditions and disregarded them. Plaintiffs further contend that Defendant K.A.M. is liable for punitive damages because its conduct in allowing Defendant Sewell to drive for K.A.M. was outrageous. Finally, Plaintiffs argue that Defendant K.A.M. is vicariously liable as Defendant Sewell's employer for Defendant Sewell's allegedly outrageous conduct on the night of the accident.

The Defendants specifically object to the Magistrate Judge's report with respect to two issues. First, the Defendants argue that Magistrate Judge Mannion erred as a matter of law when he equated the standard for vicarious liability for punitive damages with the standard of liability for direct punitive damages. Second, the Defendants argue that Magistrate Judge Mannion erred by concluding that an issue of fact exists with regard to Defendant Sewell's conduct and that a reasonable jury could award Plaintiffs punitive damages based on Defendant Sewell's conduct. We shall address each of the Defendant's objections in turn.

### A. Vicarious Liability Objection

Magistrate Judge Mannion recommended that this Court deny summary judgment with respect to Count 6 in the complaints. Specifically, Magistrate Judge Mannion concluded that the Court of Appeals for the Third Circuit has not announced a higher standard for vicarious liability for punitive damages than exists for direct liability for punitive damages. The Defendants object, arguing that both the Pennsylvania Supreme Court and the Third Circuit have recognized that the vicarious imposition of punitive damages must be judged under an even higher standard than the already high standard of conduct reserved for direct punitive damages claims.

Our reading of the relevant case law indicates that contrary to the Defendants' argument, Magistrate Judge Mannion's holding was not in error, and that vicarious imposition of punitive damages are not to be judged under a higher standard than the already high standard of conduct reserved for direct punitive damages claims.

In <u>Skeels v. Universal C.I.T. Credit Corp.</u>, 335 F.2d 846 (3d Cir. 1964), the Third Circuit explained that under Pennsylvania law, "a corporation is liable for [punitive] damages for the act of its servant, done within the scope of his authority, under circumstances which would give such a right to the plaintiff as against the

servant." Id. at 852.  The Third Circuit went on to note that "recognizing the harshness of this rule, the Supreme Court of Pennsylvania has warned that 'too great caution cannot be exercised in permitting the recovery of punitive damages for the willful or reckless act of a servant not authorized or approved by the master.'" Id. (citing Funk v. Kerbaugh, 222 Pa. 18, 19 (1908)).  The Third Circuit concluded its analysis of the issue by stating, "[t]he sum of the matter seems to be that the conduct of the agent who inflicts the injury complained of must be rather clearly outrageous to justify the vicarious imposition of exemplary damages upon the principle." Id. (citing Chambers v. Montgomery, 411 Pa. 339 (1963)).

The Defendants contend that the language of the Skeels opinion necessarily implicates, and in fact creates, a higher standard for vicarious punitive damages than that applied to claims of direct punitive damages.  Magistrate Judge Mannion, however, finds it apparent, as do we, that the Skeels opinion merely reiterates Pennsylvania's already high punitive damages standard.  We cannot accept the invitation of the Defendants to find the qualifying language of "rather clearly" as applied to the phrase "outrageous conduct," to create a second, higher threshold for vicarious punitive liability.  Accordingly, we will reject the Defendant's objection as to this portion of the Magistrate Judge's Report and Recommendation.

**B.     Genuine Issue of Material Fact Objection**

The Defendants argue that there is no genuine issue of material fact as to whether Defendant Sewell's conduct meets the threshold for punitive damages, alleging there is no evidence to indicate that Defendant Sewell was driving too fast for the road conditions.  We find this assertion to be plainly without merit.  First, as Magistrate Judge Mannion properly noted, an issue of fact remains as to whether the weather was icy or merely wet such that Defendant Sewell must have recognized the risk of black ice.  Further, a genuine issue of material fact remains as to whether Defendant Sewell was speeding excessively in light of the road conditions and whether dangerous road conditions existed that ought to have alerted Defendant Sewell to the risk of driving as he was.

Magistrate Judge Mannion properly notes that under the summary judgment standard, it is not the Court's task to weigh the conflicting evidence, but rather to determine whether the conflict presented by that evidence is genuine and material. The above-stated factual conflicts are all relative to the determination of whether Defendant Sewell's conduct was so outrageous as to support an award for direct or vicarious punitive damages.  Accordingly, we must reject the Defendants' objections on this point and adopt the Magistrate Judge's reasoning.

As stated, our review of this case and disposition of the Defendants' objections confirms Magistrate Judge s Mannion's determinations and well-

reasoned analysis. Accordingly, because we find no error in Magistrate Judge Mannion's Report and Recommendation, we will adopt it as our own for the reasons cited herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation (doc. 37) is ADOPTED in its entirety.

2. Defendant Sewell's and Defendant K.A.M. Trucking's Motions for Summary Judgment (Civ. No. 04-2438 Doc. 16; Civ. No. 04-2439 Doc. 16; Civ. No. 04-2440 Doc. 16) are GRANTED in part AND DENIED in part to the following extent:

    a. DENIED with respect to Counts Four and Six;

    b. GRANTED with respect to Count Five.[5]

3. Count Five of Plaintiffs Gregory's, Damiano's, and Jiemjitpolchai's respective complaints are DISMISSED.

4. This case is REMANDED to Magistrate Judge Mannion for further

---

[5] We agree with Magistrate Judge Mannion's reasoning that Defendant K.A.M. cannot be held *directly* liable for punitive damages. Pennsylvania law requires that in such a case a defendant must have a conscious appreciation of the risk of harm he creates by outrageous behavior. It is obvious that a defendant cannot consciously appreciate the risk of harm in a situation at which it is not present and of whose risky conditions it is not immediately aware. There is no evidence that Defendant K.A.M. acted in any outrageous fashion, neither in employing the admittedly experienced Defendant Sewell nor when it tasked him to travel on Interstate 81 on March 2, 2003. Accordingly, the Defendants' motion will be granted with respect to Count Five.

pre-trial matters.

                                        s/ John E. Jones III
                                        John E. Jones III
                                        United States District Judge